**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RONALD SILVA, | Case No.: 3:19-cv-00289-MMD-WGC |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 19 |
| ISIDRO BACA, et. al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 19, 19-1 to 19-21, errata at 21-1.) Plaintiff filed a response (ECF No. 24), and Defendants filed a reply (ECF No. 25).

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Isidro Baca and John Cardella.

The court screened Plaintiff's complaint and allowed him to proceed with retaliation claims against Baca and Cardella. (ECF No. 3.)

Plaintiff's cell was searched and items of contraband were found which led to the initiation of an investigation and then charges being brought asserting that Plaintiff had stolen items from the culinary. While the charges were pending, Plaintiff was suspended from his Prison Industries (PI) job as a graphic designer in the print shop. The charges were eventually dismissed, but Plaintiff did not get reinstated to his prison job.

Plaintiff alleges that in June 2016 he began filing grievances over the lack of religious materials at NNCC. In July 2017, Plaintiff claims that Cardella ordered the filing of false disciplinary charges against Plaintiff in retaliation for filing the grievances. The false charges caused him to suffer numerous shakedowns and chilled the exercise of his First Amendment rights. Plaintiff further avers that Cardella began harassing Plaintiff when he was in the shower. As a result, Plaintiff filed a complaint under the Prison Rape Eliminate Act (PREA) against Cardella. After he filed the PREA complaint, Plaintiff claims that Cardella retaliated against him by engaging in shakedowns of Plaintiff's property and spreading threatening rumors about Plaintiff's criminal charges. Cardella then falsely alleged Plaintiff's life was in danger to have Plaintiff moved out of his unit.

Plaintiff avers that Baca knew Cardella was retaliating against Plaintiff and did nothing to stop him. In addition, Plaintiff claims that Baca personally retaliated against him by refusing to reinstate Plaintiff's job after the false disciplinary charges were dropped.

Defendants move for summary judgment, arguing that Plaintiff did not properly exhaust his administrative remedies and there is no evidence that either defendant retaliated against Plaintiff.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion**

    **1. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any

actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process)). The ultimate burden of proof, however, remains with the defendant. *Id*.

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

**2. NDOC Process**

To exhaust administrative remedies within NDOC, an inmate must follow the procedures set forth in Administrative Regulation (AR) 740, which contains NDOC's grievance process. An inmate must proceed through three grievance levels to exhaust administrative remedies: the informal, first and second levels. (ECF Nos. 19-2, 19-3.) AR 740 requires that all documentation and factual allegations available to the inmate must be submitted at the informal level. (ECF No. 19-3 at 8, AR 740.05.5.A.)

### 3. Analysis

Defendants assert that Plaintiff filed two grievances that could possibly serve to exhaust his administrative remedies for this action: grievance 20063051704 (ECF No. 19-11) and 20063051988 (ECF No. 19-12). Defendants argue that neither grievance put prison officials on notice of his retaliation claims at the informal level.

Plaintiff argues that grievance 20063051988 served to exhaust his administrative remedies. In addition, he cites an inmate request form (also known as a "kite") and an emergency grievance.

#### a. Grievance 20063051704

At the informal level of this grievance, on July 18, 2017, Plaintiff requested reinstatement to his position, claiming that the accusation of theft from the culinary was false and unsubstantiated, and was not the subject of disciplinary action. Plaintiff stated that he was suspended from work on July 10, 2017, pending a notice of charges, but no disciplinary action ever took place. (ECF No. 19-11 at 3.) B. Ward responded to the informal level grievance, stating: "the reason you believe no action has been taken on your disciplinary action is because it has been referred to the disciplinary hearing committee. This is what needs to be done procedurally per AR 707. Your suspension will stand pending the final outcome of the OIC (offense in custody). Grievance denied." (ECF No. 19-11 at 2.)

Plaintiff filed a first level grievance on August 22, 2017, stating that the response indicates Plaintiff was under suspension pending final outcome of the offense in custody, but Plaintiff claimed they "violated your own procedure in retaliation to me without just cause, by level reduction and removal from unit #10." (*Id*. at 5.) He went on to state that the primary matter to be addressed in the grievance is NDOC and its officials' practice of violating First

Amendment rights. (*Id*. at 6.) He indicated that he had been harassed and retaliated against in the following ways: refusal to answer grievances by using DOC 3098 improper grievance memorandum to justify habitual rejection of grievances and refusal to process grievances; give answers (to grievances) which infer review, but then provide no redress; denying grievances which have been admitted to or that even fixed the problem; refusing to address grievances and disposing of them as "resolved" when nothing was done; refusal to deal with staff misconduct and abuse or effusing to alert inmates of the outcome of an investigation; use of operations procedures to justify and defend against violations of ARs; refusal to properly investigate claims and "rubber stamping" any staff explanation; punitive, harassing and retaliatory cell searches and "frisks" by staff to discourage use of the grievance system; transfers and adverse classification. (*Id*. at 7-8.)

Baca responded to the first level grievance: "[Y]our notice of charges on 7/5/17 for an MJ21 were dismissed. You have since been moved back to Unit 10, level 1. If you wish to continue to live in level 1 housing, please seek employment. Grievance upheld." (*Id*. at 4.)

Since the grievance was upheld at the first level, Plaintiff was not required to proceed to the second level.

A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). The grievance "need not include legal terminology or legal theories" because its "primary purpose ... is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120.

Again, it is the prison's procedures that inform the court's analysis of whether an inmate has *properly* exhausted administrative remedies. NDOC's AR 740 requires that the facts

supporting the grievance be raised at the *informal level*. This informal level grievance mentions nothing about the conduct alleged to have been undertaken by Cardella in the complaint. Even if the court were to consider facts raised in subsequent grievance levels, Plaintiff's first level grievance mentions retaliation and harassment in the general sense, but he provides no facts concerning specific incidents of retaliation that would have put the prison on notice of a problem such as is alleged to have occurred on the part of Cardella in the complaint.

Nor does the grievance allege any facts concerning retaliation by Baca. In the complaint, Plaintiff alleges that Baca retaliated against him when Baca refused to reinstate his job after the disciplinary charges were dropped, and that he did not intervene with respect to Cardella's retaliation. In the informal level grievance, Plaintiff requested reinstatement for his job. At the time he filed the informal level grievance, however, the disciplinary process was still pending. He did not grieve Baca's alleged retaliatory acts in the grievance, but simply asked to be placed back in his job. Baca responded to Plaintiff's first level grievance advising him that the notice of charges had been dismissed and that Plaintiff could seek employment.

In sum, grievance 20063051704 does not serve to exhaust administrative remedies for Plaintiff's claims against Cardella or Baca.

**b. Grievance 20063051988**

Plaintiff filed the informal level grievance on July 29, 2017, stating that on July 28, 2017, he was notified by an individual named Fleming that Cardella wanted Plaintiff out of his unit. Plaintiff stated that he went to speak to Lieutenant Ryder regarding this conduct and harassment by Cardella. Then, on July 29, 2017, Plaintiff was informed that Cardella called Plaintiff a "piece of shit sex offender" in discussing Plaintiff's criminal charges. (ECF No. 19-12 at 3; ECF No. 24 at 13-14.)

B. Ward responded to the informal level grievance stating that Cardella was contacted regarding Plaintiff's complaint and reported that Plaintiff's removal from the unit was discussed with the unit caseworker and his supervisor. They reported that Plaintiff's removal was due to Plaintiff's behavior within the unit, which also caused an offense in custody to be issued and an investigation to be initiated. Ward noted that the behavior also caused concern for Plaintiff's safety, as staff received anonymous kites regarding Plaintiff's conduct within the unit. Finally, Ward said that the claims of Cardella not acting in accordance with R 339, along with harassment and discrimination, were unfounded. (ECF No. 19-12 at 2.)

Plaintiff filed a first level grievance on September 12, 2017, stating that the response was false. He said that the incident that initiated the investigation occurred while Plaintiff was at work "in P.I. locked behind the gate." (*Id*. at 5.) Plaintiff was issued an improper grievance memorandum noting that no factual harm/loss was noted and/or no remedy was requested. (*Id*. at 4.)

Plaintiff submitted another first level grievance, stating that he did request a remedy in his informal grievance. He stated that without proper evidence or a hearing, he was suspended from work and sanctioned by level reduction, and as a result he has been denied income and privileges. (*Id*. at 7-8.)

Baca responded to the first level grievance, stating that Plaintiff was removed from Unit 10 due to his behavior in the unit and a pending offense in custody. While Plaintiff claimed that procedure was not followed, Baca said that Operational Procedure (OP) 516.01(3) allows an inmate to be removed from any level by forming a sub-committee hearing, which had occurred. The committee determined on August 10, 2017, that Plaintiff was no longer suitable for level 1 status. (*Id*. at 6, 9.)

Plaintiff filed a second level grievance on December 24, 2018, claiming the earlier response was false. He asserted that his grievance 20063051704 proved his claim, as he was returned to unit 10 and all the false allegations were dismissed. Plaintiff noted, however, that he was not allowed to return to work. The informal grievance response stated that staff were concerned for his safety, but Plaintiff said this was false and maintained that no staff concern for his safety ever existed. (*Id*. at 12, 14-16.)

Wickham responded to the second level grievance, finding that Plaintiff was removed from the unit based on his behavior, which included receiving an offense in custody. He reiterated that inmates can be moved or removed based on subcommittee recommendation. The grievance was upheld for the disciplinary appeal (referencing grievance 2006-30-51704), and noted that Plaintiff was moved back to Unit 10 and no harm was noted. (*Id*. at 11.)

This grievance does not raise any issue about Baca retaliating against Plaintiff by not reinstating his employment following dismissal of the charges against him.

The informal level grievance does discuss Cardella wanting Plaintiff removed from his unit, and Cardella calling Plaintiff "a piece of shit sex offender" in discussing Plaintiff's criminal charges.

There is no mention in the informal level grievance, however, of Cardella initiating false charges against Plaintiff, harassing Plaintiff in the shower, or of shakedowns of Plaintiff's property. Therefore, the court finds that grievance 20063051988 does not serve to exhaust these aspects of Plaintiff's retaliation claim.

Whether these statements serve to exhaust Plaintiff's administrative remedies for the remaining aspect of Plaintiff's retaliation claims (having him moved out of his unit and

11

spreading threatening rumors about his criminal charges) against Cardella and Baca is a closer call.

The grievance does not include any specific facts regarding a connection between the alleged adverse activity and any of Plaintiff's protected conduct; however, the grievance need not include legal terminology, such as "retaliation," so long as it sufficiently provides notice of the harm being grieved. *See Griffin,* 557 F.3d at 1120. With this in mind, the court finds the grievance adequately placed prison officials on notice of these forms of harm. In other words, the could finds that grievance 20063051988 serves to exhaust administrative remedies regarding Plaintiff's allegation that Cardella retaliated against him by having Plaintiff moved out of his unit and spreading threatening rumors about his criminal charges. Since Plaintiff alleges that Baca knew about this conduct and failed to intervene, it also served to exhaust that claim.

### c. Emergency Grievance

Plaintiff mentions an emergency grievance that he claims served to exhaust his administrative remedies. Plaintiff filed an emergency grievance on August 10, 2017, stating that Cardella told him that he had a bed move to Unit 5, even though he had not completed his disciplinary proceeding. He asked why he was being moved. The emergency grievance, however, was deemed as not being an emergency, and the form advised Plaintiff that if he disagreed, he could pursue a formal grievance. (ECF No. 24 at 16.) Since the emergency grievance was denied as not being an emergency, it cannot serve to have exhausted his administrative remedies as Plaintiff was required to pursue a formal grievance.

### d. Inmate Request Form

Plaintiff also argues that he exhausted administrative remedies in an inmate request form he sent to Brian Ward on July 26, 2017. In that kite, he told Ward that he was told Cardella was

targeting him for removal from Unit 10. He said that he was suspended from work pending a write-up which he had not received, and felt he was being subject to retaliation. In response, Ward told him that he had an offense in custody pending. (ECF No. 24 at 10.)

AR 740 requires an inmate to pursue the three levels of NDOC's grievance process to exhaust administrative remedies. Sending a kite about an issue is insufficient, and did not serve to exhaust Plaintiff's administrative remedies.

### e. Conclusion re: Exhaustion

Baca should be granted summary judgment as to Plaintiff's retaliation claim alleging that Baca retaliated against Plaintiff by not reinstating his employment because Plaintiff failed to exhaust his administrative remedies as to this claim.

Cardella should be granted summary judgment as to Plaintiff's retaliation claim alleging that Cardella initiated false charges against Plaintiff, harassed Plaintiff in the shower, and conducted shakedowns of Plaintiff's property. Baca should be granted summary judgment insofar as Plaintiff alleges that Baca knew of this retaliatory conduct and failed to act to intervene.

Insofar as Baca and Cardella argue that Plaintiff failed to exhaust his claim that Defendants retaliated against him when Cardella had Plaintiff moved out of his unit and spread threatening rumors about his criminal charges, the motion for summary judgment should be denied on that basis.

The court will now address the merits of the remaining aspects of Plaintiff's retaliation claims against Cardella and Baca.

### B. Retaliation

#### 1. Standard

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

#### 2. Analysis

Defendants present evidence that neither Cardella nor Baca took any of the alleged adverse action against Plaintiff, and even if they did, there is no evidence of a causal connection between the alleged conduct and Plaintiff's protected activity.

On July 5, 2017, escort officers performed a random cell search at the direction of Sergeant McBroom in Unit 10A and contraband items were found in Plaintiff's cell. (ECF Nos. 19-5, 19-6.) Castro took possession of the contraband items, and Peterson and Sawin catalogued the items and provided for them to be donated to charity. (ECF No. 19-7.) McBroom filled out the notice of charges form regarding possession of contraband. (ECF No. 19-6.) Neither Cardella nor Baca were involved in the search or the notice of charges.

Plaintiff had a full classification review on July 13, 2017, for a job review due to the pending charges. He was "unassigned" from his job pending the outcome of the disciplinary charge. The classification committee members were: Moyle, Buchanan, and Mattice. (ECF No. 19-10 at 5-6.) On July 31, 2017, he had a periodic classification review where he asked to be allowed to return to work and was advised that he had to wait until the disciplinary process was complete. (ECF No. 19-10 at 6.) Again, neither Cardella nor Baca were involved in these determinations.

A general case note dated August 10, 2017, states that Plaintiff sent a kite regarding issues in Unit 10 and he was advised that he would be moving out of Unit 10 due to not working and because of the pending charges. (ECF No. 19-10 at 6.) Another case note from the NNCC classification sub-committee that date states that Plaintiff's level would be reduced due to being "unassigned" and having pending charges. The committee members are listed as: Moyle, Hughes and Hannah. (*Id*.) Neither Cardella nor Baca were involved in these actions.

Plaintiff had a disciplinary hearing before Officer Peter Garibaldi on October 2, 2017, and the disciplinary charge was dismissed. (ECF No. 19-9.) Cardella and Baca were not involved in the disciplinary hearing.

Plaintiff then had a classification review for job placement, which noted that his disciplinary charge had been dismissed and Plaintiff was cleared to find employment. The Prison Industries supervisor was notified of this, and she was to advise the committee if reinstatement would take place. The committee members are listed as Moyle and Hannah. (ECF No. 19-10 at 6.) Again, there is no evidence that Cardella or Baca were involved.

On December 8, 2017, Plaintiff's level was reduced due to not obtaining employment, noting he had been given ample time to do so upon completion of the disciplinary process. The

committee members are listed as: Moyle, Hannah, Buchanan, and Kersten. (ECF No. 19-10 at 6-7.) There is no evidence that Cardella or Baca had any involvement in the decision to reduce Plaintiff's level.

Cardella was a correctional officer in Plaintiff's unit, but denies having engaged in any of the alleged harassment, including: harassing Plaintiff in the shower, subjecting Plaintiff to shakedowns or unauthorized cell searches, spreading rumors about his criminal conviction, claiming that Plaintiff's life was in danger in Unit 10, arranging or participating in the decision to move Plaintiff from Unit 10. (Cardella Decl., ECF No. 21-1.) Cardella also denies being aware that Plaintiff filed grievances about the lack of religious materials. (Cardella Decl., ECF No. 21-1.)

In his response, Plaintiff states that he was told that Cardella was targeting him for removal for Unit 10. He also cites a grievance response which advised Plaintiff that Cardella was contacted and stated that Plaintiff's removal from the unit was discussed with the unit caseworker and his supervisor. Plaintiff does not point to any evidence that Cardella was involved in his housing transfer or any evidence that connects that alleged conduct to Plaintiff's grievance or other protected activity.

Plaintiff argues that Cardella did participate in the fabrication of information regarding Plaintiff's safety within Unit 10. He claims that "anonymous kites" are clearly a fabrication as Plaintiff was returned to Unit 10 and no harm was noted. Plaintiff, however, provides no evidence that Cardella was the one that reported the anonymous kites or that Cardella fabricated that information. Plaintiff similarly claims that Defendants entered forensic evidence into NDOC's NOTIS system without any evidentiary support.

Plaintiff then contends that Defendants filed the false theft charges against him, and suspended him from work pending the outcome of the disciplinary charges. (Silva Decl., ECF No. 24 at 44 ¶¶ 6-7.) Plaintiff cites no evidence, however, that demonstrates Cardella or Baca had any involvement in filing the notice of charges against him or in his suspension from work. The evidence submitted by Defendants demonstrates that other prison employees wrote up the disciplinary charges and made the determinations regarding his employment.

Baca's only involvement was in responding to the first level grievance for grievance 2006-30-51988, where Plaintiff complained of his move and Cardella calling him a "piece of shit sex offender" while discussing his criminal charges. In his first level grievance, Plaintiff complained of his suspension from prison employment and his level reduction due to what he described were false charges.

Baca did not refuse to reinstate Plaintiff's prison employment. In grievance 2006-30-51704, Plaintiff requested reinstatement of his prior employment position. The informal level grievance was denied because the disciplinary proceeding was still pending. Baca *upheld* the first level grievance, noting that the disciplinary charges had been dismissed, and told Plaintiff he *could seek employment*.

Plaintiff had not obtained employment by December 8, 2017, and so his level was reduced. Baca was not involved in determining whether Plaintiff was given a job or reducing Plaintiff's level, and Plaintiff presents no evidence to the contrary.

Finally, Plaintiff argues that there is evidence that Baca retaliated because Baca's grievance response was untimely. The mere fact that Baca's response to Plaintiff's grievance was not timely does not demonstrate that Baca retaliated against Plaintiff. In fact, AR 740 states that if a response is untimely, the inmate may proceed to the next level.

Plaintiff argues that Baca did not submit a declaration to support his position; however, Defendants submitted other evidence that demonstrates Baca was not involved in any adverse action against Plaintiff.

Defendants have submitted evidence that they did not take any adverse action against Plaintiff and there is no evidence of a causal connection between any of the alleged adverse conduct and Plaintiff's protected activity. In his response, Plaintiff fails to present evidence to raise a genuine dispute of material fact as to these issues. Therefore, summary judgment should be granted in Defendants' favor as to the remaining aspects of Plaintiff's retaliation claims.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 19).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: September 16, 2021

*William G. Cobb*
William G. Cobb
United States Magistrate Judge