UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RONALD SILVA,

Plaintiff,

v.

ISIDRO BACA, *et al.*,

Defendants.

Case No. 3:19-cv-00289-MMD-CSD

ORDER

## I. SUMMARY

*Pro se* Plaintiff Ronald Silva, who is in the custody of the Nevada Department of Corrections ("NDOC"), brings this 42 U.S.C. § 1983 action against warden Isidro Baca and correctional officer John Cardella (together, "Defendants"). (ECF No. 4 ("Complaint").) Silva alleges that Defendants retaliated against him while he was housed at the Northern Nevada Correction Center ("NNCC") in violation of the First Amendment. (ECF Nos. 3, 4.) Before the Court is the Report and Recommendation of United States Magistrate Judge William G. Cobb. (ECF No. 26 ("R&R").) The R&R recommends the Court grant Defendants' motion for summary judgment (ECF No. 19).[1] Silva timely filed an objection to the R&R. (ECF No. 27 ("Objection").)[2] Because the Court agrees with Judge Cobb that Silva has failed to exhaust his administrative remedies and does not offer evidence that Defendants took adverse actions against him—as further explained below—the Court overrules Silva's Objection and adopts the R&R in full.

## II. BACKGROUND

The Court incorporates by reference Judge Cobb's recitation of the factual background provided in the R&R, which the Court adopts here. (ECF No. 26 at 1-2, 7-8, 9-11, 12-13.)

---

[1]The Court has additionally reviewed Silva's response and Defendants' reply. (ECF Nos. 24, 25.)

[2]Defendants did not file a response to the Objection.

## III. LEGAL STANDARD

### A. Review of the Magistrate Judge's Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court's review is thus *de novo* because Silva filed his Objection. (ECF No. 27.)

### B. Summary Judgment

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

///

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies the requirements of Rule 56 of the Federal Rules of Civil Procedure, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Following a *de novo* review of the R&R and other records in this case, the Court finds good cause to accept and adopt Judge Cobb's R&R in full. In the R&R, Judge Cobb recommends granting summary judgment in favor of Defendants, finding that Silva has failed to exhaust his claims through NDOC's administrative process and further fails to offer evidence that Defendants retaliated against him. (ECF No. 26 at 5-18.) The Court agrees and will address Silva's exhaustion and retaliation arguments below.[3]

### A. Exhaustion

In his Objection, Silva appears to make two arguments related to exhaustion. The first argument asserts that Silva exhausted all levels of his administrative remedies because his grievances were "decided on the merits." The remaining argument pertains to the alleged unavailability of grievance documentation related to an emergency grievance (No. 20063027995 ("Emergency Grievance")) that Silva filed. The Court is unconvinced by these arguments and will address them in turn.

[3]The Court notes that Silva's arguments are not entirely clear and at times difficult to follow. As such, the Court construes his argument as stated herein.

**1. Decided on the Merits**

Silva appears to argue that he exhausted all levels of administrative remedies available to him because his grievances were not rejected for procedural non-compliance but were rather "decided on the merits." (ECF No. 27 at 5.) Citing to *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) and *Gregory v. Ayers*, Case No. CIVS042523DFLPANP, 2006 WL 548444, *2-*3 (E.D. Cal., Mar. 3, 2006), Silva asserts that "proper exhaustion" under the Prison Litigation Reform Act ("PLRA") merely requires that he comply with NDOC's deadline and other crucial procedures. (*Id.*) However, the Court disagrees and finds that Silva's interpretation and reliance on these cases are misplaced.

The PLRA requires inmates to first exhaust the administrative remedies available to them prior to filing an action in court. *See* 42 U.S.C. § 1997e(a). The PLRA makes exhaustion mandatory. *See Porter v. Nussle,* 534 U.S. 516, 524 (2002). The grievance process that a prison has put in place determines whether an inmate has complied with the exhaustion requirement. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Griffin v. Arpaio,* 557 F.3d 1117, 1119-20 (9th Cir. 2009). An incarcerated person's failure to exhaust administrative remedies is a proper basis for terminating a civil rights action under the PLRA. *See Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003). Moreover, the Ninth Circuit has stated that a grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp. v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2020) (quoting *Griffin*, 557 F.3d at 1120). And that "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay ground for litigation." *Griffin*, 557 F.3d at 1120.

The Court, having reviewed the record, finds that Silva's first grievance (No. 20063051704 ("First Grievance")) and second grievance (No. 20063051988 ("Second Grievance")) failed to allege facts that Cardella retaliated against Silva by falsely filing notice of charges and that Cardella harassed Silva in the shower. (*See* ECF Nos. 19-11, 19-12.) Moreover, Silva's First and Second Grievances (together, "Grievances") also failed to allege facts that Baca was aware of Cardella's wrongful actions and did nothing, or that

Baca retaliated against Silva by refusing to reinstate his job after false charges were dropped. (*See id*.) As such, the Court finds that Silva failed to properly exhaust these claims which he alleges in his Complaint.[4] Therefore, whether Silva's Grievances were "decided on the merits" is irrelevant when his Grievances did not alert Defendants of the nature of wrongdoing that Silva sought redress. *See Sapp*, 623 F.3d at 824. This objection is therefore overruled.

**2. Emergency Grievance**

Silva states that grievance documentation was not made available to him when he filed his Emergency Grievance until after he filed his First Grievance at the informal grievance level. (ECF No. 27 at 5-6.)[5] The Court construes this as an argument that administrative remedies were not made available to Silva and thus, Silva exhausted his claims. The Court is unconvinced by this argument.

In his Objection, Silva does not offer any factual allegation that the NDOC did not make grievance documentation available to him. Indeed, the record reflects the Emergency Grievance was submitted on August 10, 2017, which occurred after Silva filed his First Grievance at the informal grievance level on July 29, 2017. (ECF No. 24 at 13, 16.) But Silva's Emergency Grievance did not allege certain retaliatory acts discussed in the previous section, it merely expressed that Cardella informed Silva that he would have a "bed move to unit #5." (*Id*. at 16.) Additionally, on the same day Silva filed his Emergency Grievance, an NDOC supervisor responded that his Grievance was in fact "not an

---

[4]The Court, however, finds that Silva did provide statements in his Grievances that suggest that Cardella retaliated against him by spreading rumors about Silva's criminal charges and moving Silva out of his unit. Baca by extension knew of the retaliatory acts and failed to act. Although the Court construes Silva's statements as exhausting these retaliation claims, Silva nevertheless fails to offer evidence of a causal connection between Defendants' adverse actions and his protective activities to survive Defendants' motion for summary judgment. *See infra* Section IV(B) at pp. 6-7.

[5]Additionally, Silva appears to make a second argument related to his Emergency Grievance. Referencing the log of the Emergency Grievance, Silva appears to argue that because the Emergency Grievance was upheld on July 5, 2017, and signed by Deputy Director Harold Wickham, there is a genuine dispute of material fact regarding his claim that Defendants took adverse actions against him. (ECF 27 at 6.) However, Silva fails to direct the Court to this log and the Court was unable to locate it in the record. Without more, the Court declines to address the merits of the argument.

emergency." (*Id*.) Even if the Court presumes that the unavailability of grievance documentation caused an untimely filing of the Emergency Grievance, which may have rendered Silva's administrative remedy unavailable, the NDOC did not deny the Grievance as untimely. In fact, Silva states against his own interest, that "NDOC and NNCC officials continued to move the grievance forward without rejection for any non-compliance issues." (ECF No. 27 at 5.) While the Ninth Circuit has "recognized specific circumstances that render administrative remedies unavailable" and has found on more than one occasion that "administrative processes effectively are unavailable even though they exist on the books," *Fordley v. Lizarraga*, 18 F.4th 344, 351-52 (9th Cir. 2021) (internal quotes and citation omitted), the Court does not find the circumstances in this action warrant rendering the administrative remedy unavailable to conclude that Silva properly exhausted his claim. As such, this objection is overruled.

**B. Retaliation**

In the R&R, Judge Cobb found that there was no evidence of a causal connection between Defendants' alleged adverse actions and Silva's protected activity. (ECF 26 at 14.) Silva attaches an inmate grievance history (ECF No. 27 at 8-10) to his Objection and counters that a causal connection existed between Defendants' adverse actions and Silva's protective activity in the "suspect timing" between the two. (*Id*. at 6.) The Court is unconvinced by Silva's argument.

The inmate grievance history that Silva attaches show the various grievances he reported about the lack of religious material available to him. (*Id*. at 8-10.) The last entry in the grievance history is dated June 23, 2017, and it contains a response from Deputy Director Harold Wickham. (*Id*. at 10.) It is unclear to the Court based on the grievance history and the conclusory nature of Silva's objection, the causal connection between these religious-material grievances and Defendants' alleged adverse actions. Notably, the grievance history does not once mention Cardella, nor were any of these grievances assigned to him. (*See id*. at 8-10.) While the grievance history does include a response from Baca denying Silva's level one grievance on January 10, 2017 (*id*. at 9), the first

alleged adverse action by NDOC—a random cell search at the direction of Sergeant Michael McBroom—took place on July 5, 2017 (ECF No. 19-5). Even assuming Cardella and Baca were involved with the search despite the fact that there is no evidence they were, the Court considers the July 5 search too attenuated from Baca's January 10 response and declines to find the timing is "suspect." As such, and without a clearer articulation from Silva as to the causal connection between the adverse actions and his protected activity, the Court overrules this objection.

## V. CONCLUSION

It is therefore ordered that the Report and Recommendation of Magistrate Judge William G. Cobb (ECF No. 26) is accepted and adopted in full.

It is further ordered that Plaintiff Ronald Silva's Objection (ECF No. 27) to the Report and Recommendation is overruled.

It is further ordered that Defendants' motion for summary judgment (ECF No. 19) is granted.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 15th Day of February 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE